Filed 11/22/22 In re I.B. CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FOURTH APPELLATE DISTRICT

# DIVISION TWO

| | |
|---|---|
| In re I.B., a Person Coming Under the Juvenile Court Law. | |
| SAN BERNARDINO COUNTY CHILDREN AND FAMILY SERVICES, | E079403 |
| Plaintiff and Respondent, | (Super.Ct.No. J285274) |
| v. | OPINION |
| J.B., | |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County. Steven A. Mapes, Judge. Conditionally reversed and remanded with directions.

Michelle D. Pena, under appointment by the Court of Appeal, for Defendant and Appellant.

Tom Bunton, County Counsel, Svetlana Kauper, Deputy County Counsel for Plaintiff and Respondent.

1

Defendant and appellant J.B. (Mother) appeals after the termination of her parental rights to I.B. (a boy, born June 2017; Minor) at a Welfare and Institutions Code section 366.26[1] hearing. Mother contends the juvenile court failed to make an express finding that ICWA did not apply. Further, the matter must be reversed for the failure of plaintiff and respondent San Bernardino County Children and Family Services (CFS) to adequately perform its initial duty of inquiry about Indian ancestry to determine whether Minor was an Indian child. Moreover, CFS failed to provide complete notice to the relevant tribes and Bureau of Indian Affairs (BIA) when it neglected to provide all available information. Remand is necessary in order for additional inquiry as to whether Minor is an Indian child and to provide adequate notice, if necessary.

## FACTUAL AND PROCEDURAL HISTORY

### A. DETENTION

Mother and M.B. (Father) had a previous case involving Minor. The case was dismissed with family court orders giving custody of Minor to Father. Father married A.R. (Stepmother). Father was convicted of assault with a deadly weapon and was given a seven-year prison sentence with a parole date of July 2021. Father executed an agreement in favor of Stepmother before going to prison, giving her temporary guardianship of Minor. On May 15, 2020, it was reported to CFS that Stepmother had been drinking 10 shots of alcohol a day in order to cope with the stress of taking care of Minor and to deal with Father's incarceration. Previously, in April 2020, a social worker

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

2

had gone to Stepmother's home and Stepmother had tested clean. A safety plan was put in place for Stepmother to engage in random drug and alcohol testing. Stepmother had a positive test for alcohol on May 15, 2020. A meeting was held with Stepmother and CFS. Also present was a maternal aunt (Rebecca), and maternal great-grandmother.

Stepmother reported taking between seven to 10 shots of alcohol every day for one year. She reported being a "heavy drinker," and that she suffered from pancreatitis. She had been a heavy drinker since 2018. Stepmother and Father had separated prior to him going to jail but Minor remained with her. She drank to deal with her depression. She denied that her drinking impacted her ability to take care of Minor. Stepmother agreed to have Minor stay with Rebecca.

Mother was interviewed on May 15, 2020. She was aware that Minor was being cared for by Stepmother. Stepmother and Mother were cousins. She was unaware that Stepmother suffered from alcoholism. She had never observed Stepmother drink alcohol. Mother had been visiting with Minor at maternal great-grandmother's house. Mother agreed that it was best to have Rebecca care for Minor. Mother wanted to have Minor returned to her custody. Mother admitted that at the time Minor was born, Mother tested positive for methamphetamines. Mother was homeless and using drugs. She agreed to have Father take custody of Minor because she was unable to provide a stable environment. She had not used drugs since November 2018. Mother was committed to maintaining her sobriety. Mother was pregnant and agreed to drug test for CFS. Mother, Stepmother and Rebecca agreed that Minor could be placed with Rebecca.

3

A social worker spoke with Father on May 19, 2020. He was incarcerated and placed at Fire Camp. He insisted that he was unaware that Stepmother had a drinking problem. Although he and Stepmother were separated, he was hopeful they would reconcile.

As of May 22, 2020, Mother had not drug tested. Mother had since disappeared. Minor was detained and placed in a foster home.

On May 29, 2020, CFS filed a section 300 petition for Minor against Mother, Father and Stepmother (petition). It was alleged failure to protect pursuant to section 300, subdivision (b), that Father and Mother suffered from substance abuse problems and could not adequately care for Minor; Mother had failed to protect Minor from the behavior of Minor's custodian, Stepmother, which put Minor at a risk of serious harm or injury. It was further alleged pursuant to section 300, subdivisions (b), and (j), that Minor had been removed from Mother's care in 2017 due to her substance abuse problems and placed in the custody of Father.

Mother completed a family find and ICWA inquiry form on June 1, 2020. She provided the names of maternal aunts Melissa N., and Rebecca. She checked the box that she may have Indian ancestry and named the Pala tribe. She also provided the name of maternal great-grandmother, her phone number, and only that she lived in Redlands. Mother also filed an ICWA-020 form indicating possible Indian ancestry in the Pala tribe.

A detention hearing was held on June 1, 2020. Mother was present in court. The juvenile court found there was a prima facie case for detaining Minor. Mother was ordered to submit to drug and alcohol testing. The juvenile court noted that ICWA may

4

apply based on Mother's claim of Indian ancestry in the Pala Indian tribe. Mother stated that maternal great-grandmother was a registered member. Father was ordered to submit an ICWA-020 form. Father requested that Minor be placed with paternal grandmother.

### B. JURISDICTION/DISPOSITION REPORT AND HEARING

The jurisdiction/disposition report was filed on July 8, 2020. It was recommended that the allegations in the petition be found true. Stepmother should be dropped from the case as she had no legal standing in the case. Family reunification services should be granted to Mother but denied to Father. Minor had been placed in the home of maternal aunt, Ms. B, on May 29, 2020.

The report stated that ICWA did not apply. It was noted that Mother had no known Indian ancestry. Inquiry of Father was made on July 6, 2017, and he denied Indian ancestry. A social worker tried to contact Mother on June 17, 2020, and July 6, 2020, at the phone number she had provided. A message was left for Mother but she had not returned the calls. On June 9, 2020, a social worker spoke with "maternal aunt/caregiver," with no further identifying information, who denied any Indian ancestry. CFS attempted to contact Rebecca but her phone number was no longer in service.

Mother had lost custody of Minor's older sibling in 2016; Rebecca was named the legal guardian. Mother failed to show for a drug test on June 25, 2020, and results of a test on July 7, 2020 were still pending. Mother had not visited with Minor. Mother had prior convictions of being under the influence of drugs and maintaining a drug house. CFS reported that Father had an extensive criminal history including assault, drug offenses and burglary.

5

CFS recommended that family reunification services not be given to Father because of his incarceration and conviction of a violent felony. It was noted that ICWA noticing requirements had been initiated and Minor may come under the provisions of ICWA. Attached to the jurisdiction/disposition report was a minute order from the prior case in which custody was given to Father. The juvenile court had found that ICWA did not apply in that case.

Additional information was provided to the juvenile court on August 21, 2020. Father remained incarcerated with an unknown release date. Mother had not contacted CFS during the reporting period.

On August 25, 2020, the matter was set for the jurisdiction/disposition hearing but Father's counsel requested a continuance so Father could be transported from prison. CFS was also seeking a continuance. Counsel for CFS stated, "We don't have the ICWA done because we can't get ahold of the mother to complete the ICWA 030, so we will try to find some family members to interview. Mom, I think, claimed Pala ancestry." The matter was continued to October 8, 2020. On October 8, 2020, the matter was again continued in order for Father to be transported from prison and for CFS to complete its ICWA inquiry.

On November 18, 2020, CFS filed its ICWA declaration of due diligence. CFS sent notice to the Pala Band of Missions Indians and BIA on November 12, 2020. No response had been received. The notice provided the names of Mother and Father, along with their birth dates and places. The notices provided the names of maternal grandmother and paternal grandmother. Birth dates were provided for both. A tribal

6

enrollment number was provided for maternal grandmother, who was listed as deceased. The names and birth dates of maternal and paternal grandfathers were also provided. Maternal great-grandmother's maiden name was not provided. Her birth date was provided but not her birthplace or address. The only tribal affiliation was listed as the BIA. Maternal and paternal great-grandfather's names were provided along with their birth dates. All of the paternal great-great-grandparents' names were provided along with their birth dates. The matter was continued again on November 25, 2020.

Another ICWA declaration of due diligence was filed on January 6, 2021. The Pala Indian tribe had acknowledged receipt of the notice on November 16, 2020. BIA acknowledged service on November 17, 2020. No confirmation had been received from any Indian tribes as of January 6, 2021.

Additional information was provided to the juvenile court on January 12, 2021. A corrected criminal history for Father was provided. His release date from prison was still unknown. Mother had not been in contact with CFS during the reporting period. Minor remained with maternal aunt, Ms. B.

The jurisdiction/disposition hearing was continued to January 13, 2021, as Father was scheduled to be released from prison.

On February 9, 2021, CFS filed its ICWA Findings and Orders. CFS provided in its findings that ICWA did not apply as the required 65-day period of time since notice was received by the BIA and indicated tribes had passed with no affirmative response of tribal membership received. The order finding that ICWA did not apply was signed by the juvenile court. Included with the order was the final ICWA declaration of due

7

diligence. It provided that the Pala Indian tribe and BIA had been properly served and had not responded within 65 days.

CFS filed a new findings and orders on February 16, 2021. It included that Minor may come under the provisions of ICWA and that noticing requirements had been initiated. CFS was now recommending reunification services for Father since he was out of prison.

The jurisdiction/disposition hearing was held on February 16, 2021. Mother was not present. Father appeared telephonically. Father denied any Indian ancestry. CFS entered all of its reports, including the ICWA due diligence notices and the findings and orders on ICWA. Stepmother was dismissed from the action. Father's counsel requested that Minor be returned to Father's care. Father's counsel also noted that the correct criminal history showed no drug convictions and was not as extensive as the original history provided. The petition was amended to eliminate the section 300, subdivision (j), allegation against Mother. As amended, the juvenile court found the allegations to be true. The juvenile court found, "I will adopt the findings and orders." Family reunification services were ordered for both Mother and Father.

Father filed a family find and ICWA inquiry form on February 16, 2021. He listed Stepmother and paternal grandmother with phone numbers. He filed an ICWA-020 form denying any Indian ancestry.

8

## C.   REVIEW REPORTS AND HEARINGS

CFS filed a six-month review report on August 4, 2021. Minor remained in placement with Ms. B. She was willing to adopt Minor. It was recommended that reunification services for Mother and Father be terminated. The report stated that ICWA did not apply. Mother had not been in contact with CFS, but family members reported she had lost her baby. Mother had not participated in her reunification services. Mother had visited Minor only one time during the dependency proceedings. Minor did not recognize her as his mother.

Father had completed his services, including therapy, parenting education, and having negative drug tests, but CFS was concerned about his protective capacity. Father continued to be in a relationship with Stepmother, he was living with her and he denied that Stepmother had a substance abuse problem. On July 28, 2021, Stepmother reported she had enrolled in an outpatient program on June 19, 2021, and would provide paperwork to CFS. Stepmother did not give the social worker consent to contact the program. Father had been consistent with visitation with Minor. Visits occurred at the home of maternal great-grandmother.

Additional information was provided by CFS on September 23, 2021. Father had moved in with paternal grandmother. After he moved, Stepmother had died. Based on the change in circumstances, CFS was now recommending that Father be given additional reunification services. At the six-month review hearing held on September 27, 2021, reunification services were continued for Father but terminated for Mother.

9

A status review report was filed on November 18, 2021. The recommendation was that Minor remain in Ms. B's home but that the permanent plan be to return home to Father. It was noted that ICWA did not apply. Father lived with paternal grandmother who was willing to help him with the care of Minor. Mother had not been in contact with CFS. Father had fully participated in reunification services up until the time of Stepmother's death. He needed to complete more therapy sessions. CFS recommended additional services to Father.

Additional information was provided to the court on November 22, 2021. Father had relapsed and tested positive for amphetamines on November 16, 2021. As such, CFS was no longer recommending an extension of reunification services, and recommended that services be terminated as to Father. The matter was set contested on February 16, 2022.

Additional information was provided on February 15, 2022. Father had been arrested on a charge of possession of a firearm by a felon, burglary, and violation of his parole. Father had not completed any further services during the reporting period. CFS recommended termination of Father's reunification services and adoption by Ms. B. At the review hearing on February 16, 2022, Father's reunification services were terminated and the matter was set for a section 366.26 hearing. Mother was not present at the hearing. As for ICWA, CFS provided that it did not apply. It stated, "ICWA noticing was completed and the required sixty-five (65) day period of time since noticing was received by the [BIA] and indicated tribes passed with no affirmative response of tribal membership received."

D.   SECTION 366.26 REPORT AND HEARING

The section 366.26 report was filed on June 9, 2022; Minor was four years old. The recommendation was termination of parental rights and adoption by Ms. B. Minor was strongly bonded to Ms. B and his cousins. ICWA did not apply as notice was given to the BIA and Pala tribe and no response had been received.

Additional information was provided on July 8, 2022. CFS had made further ICWA inquiries. Two maternal aunts, Rebecca and Melissa, denied any Indian ancestry. CFS made several attempts to contact paternal grandmother, but received no response. CFS stated, "On July 7, 2022, the undersigned attempted to contact [maternal great-grandmother] to inquire about Native American Ancestry in her family." Maternal great-grandmother had not returned the phone calls. Social workers were informed by Rebecca that maternal great-grandmother was bedridden and unable to respond to their inquiries. Rebecca offered to help facilitate a conversation between a social worker and maternal great-grandmother, but had yet to contact CFS. Father had not visited with Minor since February 23, 2022. Father did not have a strong bond with Minor. Minor had only one visit during the pending dependency proceedings with Mother, and he did not recognize her as his mother. CFS recommended that parental rights should be terminated.

The section 366.26 hearing was conducted on July 11, 2022. Mother and Father were present in court. No affirmative evidence was presented. The juvenile court adopted all previous findings and orders that did not conflict with the termination of parental rights. Parental rights of Father and Mother were terminated and Minor was freed for adoption.

11

**DISCUSSION**

Mother contends the juvenile court failed to make an express finding that ICWA did not apply. Further, the matter must be reversed for the failure of CFS to adequately perform its initial duty of inquiry about Indian ancestry to determine whether Minor was an Indian child. Moreover, it failed to provide complete notice to the relevant tribes and BIA when it neglected to provide all available information. Remand is necessary in order for additional inquiry as to whether Minor is an Indian child and to provide adequate notice, if necessary. Since we conclude, *post*, that remand is necessary in order for CFS to conduct further inquiry, we need not address the issue of whether the juvenile court made an express finding that ICWA did not apply.

"Congress enacted ICWA in 1978 in response to 'rising concern in the mid-1970's over the consequences to Indian children, Indian families, and Indian tribes of abusive child welfare practices that resulted in the separation of large numbers of Indian children from their families and tribes through adoption or foster care placement, usually in non-Indian homes.' " (*In re Isaiah W.* (2016) 1 Cal.5th 1, 7.) " 'Notice to Indian tribes is central to effectuating ICWA's purpose, enabling a tribe to determine whether the child involved in a dependency proceeding is an Indian child and, if so, whether to intervene in, or exercise jurisdiction over, the matter.' " (*In re S.R.* (2021) 64 Cal.App.5th 303, 313.)

"ICWA provides: 'In any involuntary proceeding in a State court, where the court knows or has reason to know that an Indian child is involved, the party seeking the foster care placement of, or termination of parental rights to, an Indian child, . . . shall

12

notify the parent or Indian custodian and the Indian child's tribe, by registered mail with return receipt requested, of the pending proceedings and of their right of intervention.' [Citation.]  ICWA also requires child welfare agencies to notify the [BIA] of the proceedings, if the juvenile court knows or has reason to know the child may be an Indian child but the identity of the child's tribe cannot be determined." (*In re N.G.* (2018) 27 Cal.App.5th 474, 479-480, fns. omitted.)  " 'ICWA itself does not impose a duty on courts or child welfare agencies to inquire as to whether a child in a dependency proceeding is an Indian child.' . . . . [¶] . . . 'ICWA provides that states may provide "a higher standard of protection to the rights of the parent or Indian custodian of an Indian child than the rights provided under" ICWA.' " (*In re J.S.* (2021) 62 Cal.App.5th 678, 685.)

Pursuant to California law, "section 224.2 creates three distinct duties regarding ICWA in dependency proceedings.  First, from the [CFS]'s initial contact with a minor and his family, the statute imposes a duty of inquiry to ask all involved persons whether the child may be an Indian child.  [Citation.]  Second, if that initial inquiry creates a 'reason to believe' the child is an Indian child, then the Agency 'shall make *further inquiry* regarding the possible Indian status of the child, and shall make that inquiry as soon as practicable.'  [Citation.]  Third, if that further inquiry results in a reason to know the child is an Indian child, then the formal notice requirements of section 224.3 apply." (*In re D.S.* (2020) 46 Cal.App.5th 1041, 1052.)

" ' "The juvenile court must determine whether proper notice was given under ICWA and whether ICWA applies to the proceedings." ' [Citation.]  'If the court makes

a finding that proper and adequate further inquiry and due diligence as required in [section 224.2] have been conducted and there is no reason to know whether the child is an Indian child, the court may make a finding that [ICWA] does not apply to the proceedings, subject to reversal based on sufficiency of the evidence.' " (*In re Y.W.* (2021) 70 Cal.App.5th 542, 552; see also *In re A.M.* (2020) 47 Cal.App.5th 303, 314.)

"On appeal, we review the juvenile court's ICWA findings for substantial evidence." (*In re D.S.*, *supra*, 46 Cal.App.5th at p. 1051.)

Here, CFS made initial inquiries with Mother and Father. Mother reported on June 1, 2020, on the family find and ICWA inquiry form, that maternal great-grandmother was registered with the Pala Indian tribe. Mother confirmed this information at the detention hearing. CFS continued the matter several times in order to obtain further information from Mother or extended relatives. CFS then prepared the notice sent to the BIA and Pala Indian Tribe on November 12, 2020.

The notice sent to the BIA and Pala Indian tribe listed the registered member as maternal grandmother, who was deceased. As for maternal great-grandmother, who Mother identified as the registered member to CFS, she was listed with a name that was different than the name provided by Mother. The only information listed was her birth date. No known address was provided and tribal membership was listed as the BIA. The BIA and Pala Indian tribe never responded to the inquiry. Once the 65 days passed, the juvenile court signed its findings and orders that ICWA did not apply. However, CFS continued to inquire regarding Minor's possible Indian ancestry.

14

On August 16, 2021, CFS provided in its status review report that Father had been visiting with Minor. Such visits occurred at maternal great-grandmother's house. The next inquiry occurred just prior to the section 366.26 hearing on July 7, 2022. This was two years since Mother had filed the initial ICWA form. CFS noted that it had attempted to contact maternal great-grandmother but was unsuccessful. CFS stated they wanted to interview her as to the family's Indian ancestry.

Based on the record, CFS did not try to interview maternal great-grandmother until two years after Mother reported maternal great-grandmother was the registered member. CFS was unable to reach maternal great-grandmother and never interviewed her. Maternal great-grandmother was "readily available" to CFS at least in August 2021, based on Father visiting Minor at her home. (*In re Benjamin M.* (2021) 70 Cal.App.5th 735, 744-745 [child protective services conceded it "failed to obtain information that appears to have been both readily available and potentially meaningful" and remand for further inquiry was appropriate].)

Further, maternal great-grandmother's name was listed differently on the ICWA notice than the name Mother provided. CFS listed yet another name on the final report in July 2022. Maternal great-grandmother's correct name is not clear from the record. It is not clear whether her proper name was provided on the ICWA notice. Further, Mother reported that maternal great-grandmother was the registered member, but the notice to the BIA and Pala Indian tribe listed maternal grandmother as the registered member. No other information was provided as to maternal great-grandmother's birth date or address.

15

CFS did not make an adequate inquiry in failing to interview maternal great-grandmother. It further failed to provide accurate information on the notice to the BIA and Pala Indian tribe. As such, even if we were to conclude the juvenile court made an implied finding that the agency conducted an adequate inquiry into Minor's Indian ancestry and gave proper notice, such conclusion was not supported by substantial evidence based on CFS's failure to interview maternal great-grandmother, despite having access to her throughout the dependency proceedings, and Mother stating she was a registered member. Maternal great-grandmother could have provided valuable information about Minor's Indian ancestry. Remand for further inquiry is appropriate as there is the "probability of obtaining meaningful information." (*In re Benjamin M.*, *supra*, 70 Cal.App.5th at p. 744.)

We also note that Father had denied any potential Indian ancestry on numerous occasions. The record does not establish if any of his extended relatives were asked about Indian ancestry. Upon remand, CFS should further inquire of Father's extended relatives of any possible Indian ancestry.

## DISPOSITION

The orders terminating parental rights to Minor are conditionally reversed and the case is remanded to the juvenile court with directions to comply with the inquiry and notice provisions of ICWA and of sections 224.2 and 224.3. If, after the court finds adequate inquiry has been made, the court finds ICWA applies, the court shall vacate its existing orders and proceed in compliance with ICWA and related California law. If the

16

court finds ICWA does not apply, the orders terminating parental rights to Minors shall immediately be reinstated. In all other respects, the court's orders are affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MILLER

Acting P. J.

We concur:

CODRINGTON

J.

FIELDS

J.